UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION – BAY CITY

IN RE:

    CARRIE ANN REINHARDT
    AND TIMOTHY CONRAD REINHARDT,
        Debtors.
_____/

Case No. 22-20558-dob
Chapter 13 Proceeding
Hon. Daniel S. Opperman

CARRIE ANN REINHARDT,
        Plaintiff,

v.

WESTON PRINCE,
        Defendant.
_____/

Adversary Proceeding
Case No. 22-02017-dob

OPINION REGARDING DEFENDANT'S
MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

Introduction

Plaintiff Carrie Reinhardt filed this adversary proceeding to avoid the transfer of her house at 323 S. Madison Avenue, Bay City, Michigan to Defendant Weston Prince, the Bay County Treasurer, because she alleges this transfer is a preference as defined by 11 U.S.C. § 547. Mr. Prince immediately filed a Motion to Dismiss or for Summary Judgment and requested an expedited hearing, which this Court partially granted. For the reasons stated in this Opinion, the procedural posture of this case directs the Court to deny the Motion to Dismiss or for Summary Judgment.

Jurisdiction

This Court has subject matter jurisdiction over this proceeding under 28 U.S.C. § 157, 28 U.S.C. § 1334, and E. D. Mich. LR 83.50(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F) (proceedings to determine, avoid, or recover preferences).

1

Background Facts

Plaintiff was the owner of 323 S. Madison Avenue, Bay City, Michigan ("Madison Avenue Property"). The real estate taxes on this property were not paid in 2019 and were returned to the Treasurer as delinquent on March 1, 2020. One year later, the Madison Avenue Property was forfeited to the Treasurer and in June 2021, a petition was filed with the Bay County Circuit Court for foreclosure of the tax lien. In February 2022, that Court held two hearings and entered a Judgment of Foreclosure vesting fee simple title to Mr. Prince[1] if the Madison Avenue Property was not redeemed on or before March 31, 2022. The property taxes were not paid by that date, so by operation of Michigan law, fee simple title to the Madison Avenue Property vested to Mr. Prince. On April 5, 2022, a Notice of Judgment of Foreclosure was duly recorded with the Bay County Register of Deeds.

Plaintiff, along with her husband, Timothy, filed a petition seeking Chapter 13 relief on June 10, 2022 and filed the Complaint initiating this adversary proceeding on June 30, 2022. This Complaint alleges the following in paragraphs 14-31:

> 14. The Notice of Judgment Foreclosure forfeiting the Property to the Defendant was signed on April 1, 2022 ("the Transfer").
>
> 15. The amount due and owing to the County as of the date of Bankruptcy Filing is approximately $5,649.50 in delinquent and current property taxes, interest and other penalties and fees.
>
> 16. On June 16, 2022, the Treasurer received service of Plaintiff's Notice of Intention to Claim Interest in Foreclosure Sales Proceeds.
>
> 17. The Value of the Property as of the date of Bankruptcy Filing is approximately $76,700.00.

---

[1] Mr. Prince is the current Treasurer for Bay County, Michigan and he is a party because of his official position. There are no allegations directed to Mr. Prince as an individual. For sake of brevity, any reference to Mr. Prince is only as the Treasurer of Bay County and not as an individual.

18. The Transfer of the Property to the Treasurer occurred during the 90 days prior to the Debtor's filing and therefore, is presumed to have occurred when the Debtor was insolvent.

19. The Treasurer has not sold or otherwise transferred any interests in the Property as of the date of this Complaint.

## CLAIM

20. Plaintiff incorporates the allegations contained in paragraphs 1-19 as though fully restated herein.

21. As more particularly described above, the County received the transfer of Debtor's residence, the Property, which is valued at $76,700.00 for the County's benefit in full satisfaction of approximately $5,649.50 in delinquent and current taxes, interest and penalties.

22. While the Treasurer may someday be obligated to return excess sales proceeds to the Plaintiff pursuant to MCL 211.78t, this statute also requires the Treasurer to receive a "sale commission equal to 5%" of the Property's sale price in addition to the delinquent and current taxes, interest and penalties.

23. The Transfer of Property constituted transfers of interest in the property of the Debtor.

24. During the preference period, the Treasurer was the creditor of the Debtor for delinquent property taxes on the Property.

25. The Transfer described above was taken from the Debtor for the benefit of the Treasurer and operated to fully satisfy a debt owed by the Debtor to the Treasurer. Specifically, delinquent property taxes.

26. The Transfer was made for, or on account of, an antecedent debt or debts owed by the Debtor to the Treasurer before such transfers were made, each of which constituted a "debt" or "claim" (as those terms are defined in the Bankruptcy Code) of the Treasurer prior to the foreclosure of the Property by the Defendant.

27. The Transfer was made while the Debtor was insolvent. Plaintiff is entitled to the presumption of insolvency for any Transfer made during the preference period pursuant to 11 U.S.C. § 547(f).

28. The Transfer was in fact made during the preference period.

29. Because of the Transfer, the Treasurer received far more than it would have received if: (i) the Debtor's case was under chapter 7 of the Code; (ii) the transfers had not been made; and (iii) the Township received payments of its debts under the provisions of the Bankruptcy Code. Specifically, the Treasurer received a Transfer of Property worth $76,700.00 in exchange for the extinguishment of $5,649.50 in delinquent taxes, current taxes, penalties and interest. Alternatively,

while the Treasurer may someday be obligated to return excess sales proceeds to the Plaintiff pursuant to MCL 211.78t, this statute permits the Treasurer to receive a 5% sales commission in addition to the $5,649.50 in delinquent taxes, current taxes, penalties and interest.

30. The Treasurer was the initial and final transferee of the Property during the preference period and was in fact the beneficiary of the Transfer.

31. Based upon the foregoing, Plaintiff is entitled to an order and judgment against the Treasurer: (i) avoiding the transfers under section 547(b) of the Code; and (ii) entitling Plaintiff to recover the transfer from the Treasurer under section 550(a) of the Code, together with the award of pre- and postjudgment interest thereon from the date of demand to the date of payment or other satisfaction of such order and judgment and the costs of this action.

Accordingly, Plaintiff seeks the following relief:

. . . avoiding the Transfer and directing Defendant to deed the property received Plaintiff [sic], pursuant to 11 U.S.C. §§ 547(b) and 550(a), plus interest from the date of demand at the maximum legal rate and to the fullest extent allowed by applicable law;

Statement of Authorities

Motion to Dismiss Rule 12(b)(6) Standard

Under Federal Rule of Civil Procedure 12(b)(6), made applicable in this adversary proceeding by Federal Rule of Bankruptcy Procedure 7012(b), a party may assert by motion the "failure to state a claim upon which relief can be granted." The United States Supreme Court has held that in order to survive a Rule 12(b)(6) motion to dismiss, the complaint must allege "enough facts to state a claim that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In so doing, the Supreme Court renounced the previously "'accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Id.* at 561-62 (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). As explained by the Supreme Court in *Twombly*, while "Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice

of what the claim is and the grounds upon which it rests," this "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.] . . . Factual allegations must be enough to raise a right to relief above the speculative level," assuming that all of the complaint's allegations are true. *Id.* at 555 (internal quotations and citations omitted).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009), the Supreme Court confirmed that the *Twombly* standard applies in all federal civil actions and not just in antitrust disputes as was the case in *Twombly*. The Supreme Court also emphasized that the assumption that all of the allegations are true does not apply to legal conclusions: "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). Moreover, the Supreme Court noted that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

In sum, while the plausibility standard first set forth by *Twombly* does not require "'detailed factual allegations'" or a showing of probability, *id.* at 678 (quoting *Twombly*, 550 U.S. at 555), "'the complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory,'" *Digeronimo Aggregates, LLC v. Zemla*, 763 F.3d 506, 509 (6th Cir. 2014) (quoting *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012)). When deciding a Rule 12(b)(6) motion to dismiss, the Court "must 'construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff.'" *Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). The defendant has the burden of showing that the plaintiff failed to state a plausible claim for relief. *Id.*

Motion for Summary Judgment Rule 56 Standard

Federal Rule of Civil Procedure 56 is made applicable in its entirety to bankruptcy adversary proceedings by Federal Rule of Bankruptcy Procedure 7056. Rule 7056(c) provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Choate v. Landis Tool Co.*, 486 F. Supp. 774 (E.D. Mich. 1980). The moving party bears the burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). The burden then shifts to the nonmoving party once the moving party has met its burden, and the nonmoving party must then establish that a genuine issue of material fact does indeed exist. *Janda v. Riley-Meggs Indus., Inc.*, 764 F. Supp. 1223, 1227 (E.D. Mich. 1991).

Section 547(b)

In order for a transfer to be avoidable as a preference under Section 547(b), the Plaintiff must prove that all of the elements of Section 547(b) have been met. *Waldschmidt v. Ranier (In re Fulghum Constr. Corp.)*, 706 F.2d 171, 172 (6th Cir.), *cert. denied sub nom.*, *Ranier & Assocs. v. Waldschmidt*, 464 U.S. 935 (1983). Section 547(b) states:

> Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property –
>
> (1) to or for the benefit of a creditor;
>
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>
> (3) made while the debtor was insolvent;
>
> (4) made –
>
>     (A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if–

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

## Summary of Arguments of the Parties

### Defendant's Position

Originally, Defendant argued that the Rooker-Feldman Doctrine precludes this Court from review of the Bay County Circuit Court Judgment. By oral argument when it became clear that Plaintiff did not contest the basis of that Judgment, Defendant conceded that the Rooker-Feldman Doctrine did not apply and withdrew that argument. Likewise, Defendant withdrew his argument that Plaintiff was not the owner of the Madison Avenue Property because a review of subsequent filings with the Bay County Register of Deeds confirmed her requisite ownership.

Instead, Defendant focused on his remaining arguments that the facts of this case do not support a preference action. Also, the need for finality of judgments, coupled with the state interest of having an orderly real estate tax sale process and the financial health and well-being of taxing governmental units and their citizens outweighed any federal statutory interest. Moreover, since the Michigan General Property Tax Act provided a means for former owners to receive remainder proceeds, the Treasurer would not receive more than he would receive in a Chapter 7.

### Plaintiff's Position

Plaintiff replies and contests the legal and factual arguments of Defendant. First, Plaintiff argues that her Complaint meets the Rule 12(b)(1) and (6) standards and adequately states a cause of action. Next, Plaintiff argues that the March 31, 2022 transfer was the requisite transfer for

7

preference purposes and she filed her Complaint timely. Further at oral argument, Plaintiff pointed out that factually the Treasurer could receive more in a tax sale situation than in a Chapter 7 setting, primarily because of fees, expenses, and the 5% commission deducted before calculating the remainder funds, as well as a litany of associated fees, expenses and fines possibly levied before the remainder funds are delivered. Finally, while Plaintiff conceded a protocol existed for the return of the remainder funds to her, this protocol required a series of court hearings and was not certain to result in all remainder funds being returned to her.

At oral argument, all agreed the requisite transfer date was March 31, 2022 and that Plaintiff had timely filed a claim by the July 1, 2022 deadline to preserve her rights to any remaining funds, which in turn required Defendant to maximize efforts to obtain the best price for the Madison Avenue Property at a sale. The parties did disagree as to the competing policy interests, as well as the effect of a Treasurer's right to combine desirable properties with less desirable properties to maximize a return, a procedure commonly referred to as bundling.

## Analysis

The Court notes that certain issues such as the application of the Rooker-Feldman Doctrine and the March 31, 2022 transfer date were clarified at oral argument and need not be addressed. In particular, the parties agreed that the steps required by the Michigan General Property Tax Act were properly followed so that this Court need not review the propriety of the Bay County Circuit Court actions. Also, there are no allegations that Mr. Prince acted improperly but instead met and fulfilled his duties as Treasurer of Bay County. Given this clarification, the elements of Mr. Prince's Rule 12(b)(1) motion need not be addressed. The Court turns to the remaining open issues.

Rule 12(b)(6) Motion to Dismiss

The elements of an 11 U.S.C. § 547 preference action are properly pled by Plaintiff such that all are sufficiently stated to survive a Motion to Dismiss. The major point of contention,

whether Defendant received more by virtue of the March 31, 2022 transfer, deserves a deeper examination.

The Complaint alleges that the Madison Avenue Property has a value of $76,700 and that the unpaid taxes total approximately $5,649.50. At first blush, the Plaintiff received more than he would be entitled in a Chapter 7. The Complaint continues to list a series of expenses, fees, and commissions that Defendant may collect if the Madison Avenue Property is sold. On its face, this element, for a Rule 12(b)(6) motion, is satisfied. Defendant argues that these fees are allowed by the Michigan General Property Tax Act and should be recognized by this Court and that Plaintiff will receive any remaining funds. While perhaps true, the Court cannot extend its review that far for purposes of the Motion to Dismiss.

Under *Twombly* and *Iqbal*, a Rule 12(b)(6) motion to dismiss is only focused on the legal sufficiency of plaintiff's Complaint and prohibits the court from straying into possible factual scenarios unless the claim is not plausible on its face. Here, for Rule 12(b)(6) purposes, Ms. Reinhardt has pled the elements of a Section 547 preference action and sufficient facts to support a plausible cause of action. The Court therefore denies the Motion to Dismiss of Mr. Prince.

Rule 56 Motion for Summary Judgment

The second part of Mr. Prince's Motion requires the Court to find that there is no genuine issue as to a material fact and that he is entitled to judgment as a matter of law. His Motion attached the Certificate of Forfeiture of Real Property, the Judgment of Foreclosure, and the Notice of Judgment of Foreclosure all regarding the Madison Avenue Property. Also, the Affidavit of Mr. Prince was attached to the Motion to Shorten Time with respect to his Motion to Dismiss or for Summary Judgment. In addition to detailing the procedures of the Michigan General Property Tax Act, these attachments also explain the sale protocols of the Treasurer. In particular, two sales are held; the first sale on August 4 and the other sale by the first Tuesday in November. In 2021, forty-nine parcels were exposed to tax sale. Forty-two properties were ultimately sold and in 2021,

twenty-six were sold at the first sale generating an average surplus of 298% of the minimum bid. The remaining sixteen properties were sold at the second auction of which four sold for the minimum bid and only one generated a surplus.

Considerable time was spent at oral argument about these sales and the disposition of any remaining funds after a sale is completed. These arguments greatly aid the Court in understanding tax sales and the proper disposition of the Motion. As a result, the Court concludes there are genuine issues of material fact such that Mr. Prince is not entitled to judgment as a matter of law, at this time.

Initially, it should be pointed out that Ms. Reinhardt filed her Complaint on June 30, 2022 and Mr. Prince has not answered the Complaint, so no discovery has taken place. Accordingly, the facts of this case are not well developed. At least four initial areas of inquiry merit attention:

A)  The "bundling" of parcels

The Michigan General Property Tax Act allows treasurers to combine less attractive parcels with a more attractive parcel to maximize the return of sale proceeds. This is a common sale tactic and in many situations is appropriate. But as explained at the July 28, 2022 oral argument, the allocation of the bundled sale proceeds is based on the state equalized valuation ("SEV") of each parcel, which could in turn adversely affect Ms. Reinhardt and her creditors. An example illustrates the problem:

> Ms. Reinhardt alleges the Madison Avenue Property has a $76,600 value, so its SEV may be assumed to be approximately $35,000[2]. If two less desirable properties are bundled with the Madison Avenue Property with each property having an SEV of $10,000 with past due taxes of $5,000 for each, the total SEV for these parcels is $55,000 ($35,000 + $10,000 + $10,000). At sale, if the Treasurer obtains a bid of

---

[2] SEV in Michigan is normally 50% of market value.

$86,000, the Madison Avenue Property would be allocated 64% ($35,000 ÷ $55,000 = 64%) or $55,040 and the other two parcels are allocated $15,500 ($10,000 ÷ $55,000 = 18%). If the assumption is that the other two properties are less desirable, then the $55,040 allocated to the Madison Avenue Property compares unfavorably to the $76,600 value, and allows the Treasurer to receive more because the $15,500 is greater than the past due taxes and exceeds the SEV as well. Of course, the discrepancy is heightened if the sale proceeds are less; the discrepancy is less if the sale proceeds are higher. Regardless, the facts are not known to the point where the Court is left to speculate, which it cannot do in a motion for summary judgment.

B) The possible assessment of other expenses and costs

The Michigan General Property Tax Act allows Mr. Prince to collect fees and expenses of sale, including a 5% commission. Also, as part of the claims adjudication process, he may be tasked with collecting other fees that may or may not be related to the sold property but related to the former owner.

While Ms. Reinhardt strongly argues this allows Mr. Prince to receive more than he would in a Chapter 7, the Court sees valid arguments for both parties. Because the record is not developed, the Court cannot assess the proper weight to give each argument, so summary judgment is not appropriate at this time.

C) The transfer of remaining proceeds to the Treasurer

As explained at oral argument, monies in excess of the unpaid real estate taxes and other expenses and items allowed by the Michigan General Property Tax Act are placed in a delinquent tax revolving fund for later disposal by a treasurer. If a former owner files a claim by the deadline, which in this case is July 1, 2022 and has already passed, then the former may receive the remaining funds after a series of court hearings many months later, perhaps a year after the sale. *West v. Michigan (In re West)*, No. 21-3039, 2022 WL 1309939, at *7 (May 2, 2022) (citing

M.C.L. § 211.78t); (quoting applicable State of Michigan website, https://www.michigan.gov/taxes/property/forfeiture-foreclosure/auctions-and-claimants). During this time, the treasurer has possession of the funds. It is possible that a treasurer receives more than would be received in a Chapter 7, and thus constitutes a preference.

Again, two examples illustrate the problem. First, as in this case, Ms. Reinhardt did file a claim to the remaining proceeds. But there is no assurance that she will receive these remaining proceeds, and, if she does, that receipt will not occur for many months whilst Mr. Prince has the benefit of those proceeds.

The second example demonstrates a clear preference. No claim is filed by July 1, 2022 and the Madison Avenue Property sells for any amount above the past due taxes and allowable items under Michigan law. For illustration, suppose the sale is $50,000, the past due taxes and all related allowable items are $10,000, resulting in $40,000 in remaining funds. This $40,000, as explained at oral argument, goes to the delinquent tax revolving fund which Mr. Prince, as Treasurer, can use to reduce or eliminate a deficit he may have because he is duty bound to acquire a local government's interest in a property when taxes are not paid by tendering the past due taxes to the local governmental unit. Without knowing more, the $40,000 in this example at first blush appears to be $40,000 more than Mr. Prince would receive in a Chapter 7.

D) The short time to file a claim

As explained at oral argument, for the 2022 tax foreclosure process, Ms. Reinhardt had until July 1, 2022 to file a claim and then proceed to complete a judicial claim adjustment protocol. The Court understands the need for quick action, but this short period is fraught with danger. Of first impression is the inability of a Chapter 7 Trustee to exercise and enforce his/her duties to avoid preferences. Here, a Trustee may not be able to make a claim at all because the Michigan General Property Tax Act does not give a Trustee the right to do so. Another example demonstrates the issue. For property foreclosed on March 31, 2022, the deadline is July 1, 2022.

12

For cases filed after July 1, 2022, the deadline has passed, even though a preference action can be pursued for two years. For cases filed between April 1, 2022 and July 1, 2022, the Trustee has a very small window that becomes impossible to meet assuming a Trustee does not know about the foreclosure until the first meeting of creditors, which must be held twenty to forty days after a bankruptcy petition is filed.

There are just a few factual scenarios that must be addressed before summary judgment can be granted. Others may exist that the Court has not yet considered.

The Importance of Michigan Law

Mr. Prince raised excellent policy arguments that this Court should not interfere with the foreclosure structure passed by the Michigan Legislature and approved by the Michigan Governor. Mr. Prince has many valid points. Local governmental units rely on real property tax revenues to fund critical governmental functions. When taxes are not paid, a shortfall exists and the general public suffers. A clear, efficient, and effective method to collect this revenue is vital. To refine this point, in this case taxes that should have been paid in 2019 will not result in money in public coffers until 2022, three years later. This Court has recognized the importance of this state interest in *RL Mgmt. Grp., LLC v. Coffman (In re RL Mgmt. Grp., LLC)*, No. 13-04843, 2014 Bankr. LEXIS 206, at *16-18 (Bankr. E.D. Mich. Jan. 10, 2014) and concluded the essential state interest of collecting taxes outweighed a "somewhat literal but inappropriate application of § 547". *Id.* at *18. This Court, however, has the benefit of additional analysis by two Circuit Courts of Appeal.

The Third Circuit Court of Appeals in *Hackler v. Arianna Holdings Co., LLC (In re Hackler)*, 938 F.3d 473 (3d Cir. 2019) addressed whether the transfer of real estate title via tax foreclosure proceedings in New Jersey may be avoided as a preference. In concluding that a preference action existed, the *Hackler* Court first observed:

> It is well-established that a "'central policy' of the Bankruptcy Code is the '[e]quality of distribution among creditors.'" In accordance with that policy, creditors of equal priority receive pro rata shares of the debtor's property. A critical

13

feature of this system is the ability to avoid pre-petition property transfers that benefit some creditors over others.

*Id.* at 476.

After concluding an important federal interest was at stake, the *Hackler* Court found:

"[W]hen the statute's language is plain, the sole function of the courts – at least where the disposition required by the texts is not absurd – is to enforce it according to its terms." Unless there is ambiguity, we "cannot allow policy to guide our analysis." Here, the statute is unambiguous. Applying its straightforward terms does not lead us to an absurd result. Thus, our reading of it ends there.

*Id*. at 477-78.

This Court finds the *Hackler* analysis persuasive for two reasons. First, it articulates a clear federal interest that the *RL Management* Court may have not considered and certainly did not articulate in its analysis. Second, *Hackler* gives more weight to the viability of this action in a tax foreclosure sale process, indicating § 547 is unambiguous and does not lead to an absurd result.

The second Court of Appeals decision, *Lowry v. Southfield Neighborhood Revitalization Initiative (In re Lowry)*, No. 20-1712, 2021 U.S. App. LEXIS 38533, at *12-15 (Dec. 27, 2021), buttresses the *Hackler* Court. Although *Lowry* is an unpublished opinion and addressed the applicability of § 548 to a Michigan tax foreclosure sale, its teachings are instructive. In *Lowry*, the Sixth Circuit reversed the District Court and allowed a § 548 action to continue. Although *Lowry* reminds all that the Court of Appeals is "a court of review, not first view", the same state interests were involved as in this case with a comparison to federal bankruptcy law interests, *id.* at *14-15, and the Sixth Circuit did not find that the state interests outweighed the federal bankruptcy law interests. Since this Court is a court of first view, additional facts should be developed before this Court makes a final conclusion on this issue as well.

Before a conclusion can be reached, this Court will need additional evidence and guidance from the parties. The Court gives great weight to the need for Michigan to have security of real estate titles after foreclosure and recovery of vital and necessary revenue to allow taxing

14

jurisdictions to carry out essential governmental functions. In contrast, a clear federal interest of treating creditors equally and fairly in bankruptcy is a major concern and duty of this Court. This Court will want more from both parties as to the proper remedy, if any, that can be awarded.

In this case, Debtors propose to pay $580 per month to the Chapter 13 Trustee, cure the tax arrearage in fifteen months and pay all their creditors in full within three years. Assuming they timely pay, this results in full payment to Defendant and all local taxing authorities by the end of 2023, if not sooner. The Court could condition confirmation of the Debtors' plan on timely payment and allow for sale of the Madison Avenue Property as early as the November 2022 sale date or as late as the August 2023 sale date if payments are not timely made. This result pays the taxes and also keeps Debtors in their home, which the Court supposes is also an important state interest.

Next, the Court is mindful that tax foreclosure sales need to be held and completed with certainty. The Michigan General Property Tax Act provides that certainty, but its provisions do cause some issues particularly as to timing. For example, the July 1 claim deadline falls just outside the ninety day preference period, but there is the practical issue of whether a bankruptcy trustee could act timely and protect all creditors. A brief inquiry by a treasurer of bankruptcy court filings shortly after July 1 may be warranted and if a filing did occur negotiations among the trustee, treasurer, and debtor could result in satisfaction of the interests of state and federal interests. These, among other concepts, should be explored.

Here, with this record at this time, since the Court cannot summarily find that Mr. Prince will prevail, his request for summary judgment is denied.

The Court will enter an order consistent with this Opinion.

**Signed on August 25, 2022**

/s/ Daniel S. Opperman

Daniel S. Opperman
United States Bankruptcy Judge