UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION – BAY CITY

IN RE:

    CARRIE ANN REINHARDT
    AND TIMOTHY CONRAD REINHARDT,
        Debtors.
_____/

Case No. 22-20558-dob
Chapter 13 Proceeding
Hon. Daniel S. Opperman

CARRIE ANN REINHARDT,
        Plaintiff,

v.

WESTON PRINCE,
        Defendant.
_____/

Adversary Proceeding
Case No. 22-02017-dob

## OPINION REGARDING MOTIONS FOR SUMMARY JUDGMENT
## FILED BY PLAINTIFF AND DEFENDANT

### Introduction

Plaintiff, Carrie Ann Reinhardt, seeks to avoid a transfer of her home to Defendant, Bay County Treasurer Weston Prince ("Treasurer"), because she claims that transfer was a preference. The Treasurer disagrees and argues Ms. Reinhardt cannot prove all elements of a preference action. For the reasons stated in this Opinion, the Court finds that Ms. Reinhardt in this case cannot prove that the transfer enabled the Treasurer to receive more than the creditor would receive if this case were a case under Chapter 7.

### Jurisdiction

This Court has subject matter jurisdiction over this proceeding under 28 U.S.C. §§ 1334, 157(a), and E. D. Mich. LR 83.50(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F) (proceedings to determine, avoid, or recover preferences).

Findings of Fact

Plaintiff, Carrie Ann Reinhardt, owned her home at 323 S. Madison Avenue, Bay City, Michigan 48708. She initially obtained an interest in this home via a quit claim "ladybird" deed on November 13, 2015 from her grandmother, Bertha Miller. Ms. Miller passed away on November 24, 2015, which gave Ms. Reinhardt sole fee simple title. Ms. Miller granted a mortgage which is currently held by PNC Bank.

Ms. Reinhardt did not pay the real estate taxes on her home which prompted tax forfeiture and foreclosure actions. All agree that the Treasurer followed all the required procedures under Michigan law. For the purposes of this adversary proceeding, focus on the events of February through April, 2022 is necessary.

On February 18, 2022, the Circuit Court for Bay County Michigan entered a Judgment of Foreclosure in favor of the Treasurer and against numerous defendants, including Ms. Reinhardt. Relevant portions of that judgment are:

> This matter was initiated with the filing of a Petition by the Bay County Treasurer for Tax Foreclosure. The Petition identified parcels of property forfeited to the Bay County Treasurer under MCL 211.78g for unpaid 2019 and prior years' taxes and set forth the amount of the unpaid delinquent taxes, interest, penalties, and fees for which each parcel of property was forfeited. The Petition sought a judgment in favor of Petitioner Bay County Treasurer for the forfeited unpaid delinquent taxes, interest, penalties and fees listed against each parcel of property. The Petition further sought a judgment vesting absolute title to each parcel of property in the Petitioner, without right of redemption, as to parcels of property not redeemed on or before March 31, 2022.
>
> . . .
>
> The Court finds that those parties entitled to notice and an opportunity to be heard have been provided that notice and opportunity.
>
> . . .
>
> (b) Fee simple title to each parcel foreclosed upon by this Judgment will vest absolutely in Petitioner, subject to the limitations of paragraphs (c) and (d), below,

without any further rights of redemption, if all forfeited delinquent taxes, interest, penalties and fees foreclosed against the parcel, plus any additional interest required by statute, are not paid to the County Treasurer on or before March 31, 2022.

(c) All liens against each parcel, including any lien for unpaid taxes or special assessments, except future installments of special assessments and liens recorded by the State or the Petitioner pursuant to the Natural Resources and Environmental Protection Act, 1994 PA 451, MCL 324.101 *et seq.*, are extinguished, if all forfeited delinquent taxes, interest, penalties, and fees foreclosed against the parcel, plus any additional interest required by statute, are not paid to the County Treasurer on or before March 31, 2022.

. . .

(e) Petitioner has good and marketable fee simple title to each parcel, subject to the limitations of paragraphs (c) and (d), above, if all forfeited delinquent taxes, interest, penalties, and fees foreclosed against the parcel, plus any additional interest required by statute, are not paid to the County Treasurer on or before March 31, 2022. [1]

A Notice of the Judgment of Foreclosure was filed with the Bay County Register of Deeds on April 5, 2022. Ms. Reinhardt filed a Notice of Intention to Claim Interest in Foreclosure Sales Proceeds on June 8, 2022. While her Notice was timely, the Notice filed by PNC Bank was not.

A few days after filing her Notice, Ms. Reinhardt and her husband filed a Chapter 13 petition with this Court. Their Chapter 13 Plan proposes to pay the Treasurer the $5,844.80 owed in real estate taxes, pay all other real estate taxes owed on her home, and to pay all of her creditors. To do so, Ms. Reinhardt needs to avoid the transfer of her home to the Treasurer. To that end, she filed this adversary proceeding.

The Treasurer filed a Motion to Dismiss, which this Court denied. The parties then engaged in discovery and were able to agree to many facts and to the introduction of exhibits. One of these exhibits reports Ms. Reinhardt's home with a value of $73,500 to $79,900, which the Court accepts as accurate.

---

[1] The Petitioner in the Bay County Circuit Court action is the Bay County Treasurer.

Another noteworthy exhibit is the Affidavit of Ann Collison attached to Ms. Reinhardt's Motion for Summary Judgment. Ms. Collison is an experienced title examiner having worked in the real estate title company field since 1990 and is an owner of a local title company, HomeLand Title Services, L.L.C. In her Affidavit, Ms. Collison stated:

> 6. During my review of the [sic] records, I also verify whether the subject property was withheld from the foreclosure by the foreclosing governmental unit or by court order.
>
> 7. I verify whether a Notice of Judgment of Foreclosure (Michigan Treasury Form 3731) has been recorded because this document is often the only recorded record that indicates whether a foreclosure action has been filed, the court in which it was filed, the case number of the foreclosure, and the date in which the judgment of foreclosure became final and unappealable as ordered by the court.
>
> 8. During my review of the subject property's title history, I also check to see if there is a recorded County Treasurer Redemption Certificate (Michigan Treasury Form 3627) of Cancellation of Notice of Judgment of Foreclosure (Michigan Treasury Form 3967). These documents help me to determine whether the Judgment of Foreclosure was timely redeemed or cancelled for some other reason.
>
> 9. In cases where I am not able to verify that all relevant parties were properly served with notice of the underlying judicial foreclosure, a tax title service company can be hired to conduct the title search and certify whether the tax sale was completed appropriately. This company may then issue a certificate to the insuring title company.
>
> 10. HomeLand Title Services, L.L.C. will not issue a title insurance policy for the subject property unless:
>
>     a. I am satisfied that there is minimal risk of a legal challenge to the Judgment of Foreclosure and that the record reflects that the redemption rights of prior lien or title holders have expired, or
>
>     b. I have received a certificate from a reputable tax title service company clearing the property's title.

## Arguments of the Parties

At oral argument, counsel for both parties confirmed that the first four elements of a preference action were present in this proceeding. The parties disagree as to whether the last two elements were present. In context of a Section 547 action, Ms. Reinhardt in this case must prove the following contested elements:

1. Whether a transfer occurred on or within 90 days of the filing of her petition.

2. Whether the transfer enabled the Treasurer to receive more than it would receive if the case were a case under Chapter 7 if the transfer had not been made and the creditor received payment of such debt provided by the Bankruptcy Code.

Ms. Reinhardt argues the transfer date is March 31, 2022, the date she no longer could pay the Treasurer and stop the foreclosure process. She also argues that on March 31, 2022, the Treasurer was only entitled to the past due real estate taxes that were owed of $5,844.80 or possibly as high as $11,054.74, the full amount of past taxes, interest, penalties, collection costs, and attorney fees. Instead, Ms. Reinhardt argues the Treasurer received a home worth at least $73,500.

The Treasurer's arguments are that the date of transfer should be February 18, 2022, the date of the Judgment, which is past the 90 day preference period. The Treasurer also argues that because Ms. Reinhardt timely filed a Notice, she will receive all surplus proceeds such that the Treasurer will not receive more than a similarly situated creditor would receive in a Chapter 7. He also points out that any costs, interest, and other charges paid from any sale proceeds are mandated and allowed by state statute.

Analysis

A.  Preliminary Overview

Various courts have criticized state and county taxing authorities about practices used to collect past due real estate taxes. The Michigan Supreme Court criticized tax forfeiture and foreclosure procedures in *Rafaeli, LLC v. Oakland Cty.*, 505 Mich. 429 (2020). In *Rafaeli*, the Michigan Supreme Court found that the then tax foreclosure procedures violated the takings clause of the Michigan Constitution. Also in Michigan, but in the federal bankruptcy context, these procedures were criticized in the case of *Lowry v. Southfield Neighborhood Revitalization Initiative (In re Lowry)*, No. 20-1712, 2021 U.S. App. LEXIS 38533 (6th Cir. Dec. 27, 2021). In *Lowry*, the Oakland County Treasurer followed state tax forfeiture and foreclosure procedures but then transferred the property to a local redevelopment authority for the unpaid taxes of $14,496.50, far less than the $152,000 value of the property. Mr. Lowry filed a Chapter 13 Bankruptcy Petition and sought to set aside the sale as a fraudulent conveyance. The Bankruptcy Court and the District Court for the Eastern District denied him this relief, but the Sixth Circuit remanded the matter because the amount received at the tax foreclosure sale bore no correlation to the value of the property. Likewise, the Sixth Circuit Court of Appeals made a similar determination under the United States Constitution in *Hall v. Meisner*, 51 F.4th 185, 197 (6th Cir. 2022). To complete the report of this area of the law, the United States Supreme Court found that a similar Minnesota foreclosure procedure violated the takings clause of the United States Constitution. *Tyler v. Hennepin Cty.*, 143 S.Ct. 1369 (2023). The Michigan Legislature reacted to *Rafaeli*, *Lowry*, and a number of individual and class action lawsuits against county treasurers by changing the tax forfeiture and foreclosure procedures.

Broadly, M.C.L. § 211.78 (West 2023) still allows taxpayers a year to pay their taxes before forfeiture and foreclosure procedures can be implemented. As in the past, after approximately two years of unpaid taxes, the county treasurer can initiate a foreclosure action in January with a hearing in February. Thereafter, a judgment is entered and the taxpayer has until March 31 under M.C.L. § 211.78k(5) to pay the unpaid taxes and associated interest and costs.[2] Thus, while a judgment date may vary, the March 31 deadline for payment does not. The notable change in Michigan is that if the taxpayer does not pay the necessary amount by March 31, the taxpayer and any other party holding an interest in the property may file a notice claiming any funds received at sale in excess of the unpaid taxes, interest and associated costs. After the sale of the property, the Circuit Court then determines the recipient of the excess proceeds. It is this procedure that may or may not address the issues raised in *Lowry*, *Rafaeli*, *Meisner*, and *Tyler*, among other cases.

B.  The Instant Case

Unlike *Rafaeli, Lowry*, *Meisner*, and *Tyler*, this case does not involve fraudulent conveyance theories or claims of an improper taking by a governmental entity. Instead, this case is based purely on 11 U.S.C. § 547 and its elements. Also, unlike *Lowry*, *Rafaeli*, and *Meisner*, this case has a notice procedure that allows Ms. Reinhardt, as a taxpayer, to receive the excess funds after sale of her home. As represented by Defendant's counsel at oral argument, Defendant also pledges to not "bundle" this property with others so as to possibly dilute the amount of available excess proceeds to Ms. Reinhardt. Finally, this case is a Chapter 13 proceeding and does

---

[2] Specifically, this section reads: (5) The circuit court shall enter final judgment on a petition for foreclosure filed under section 78h at any time after the hearing under this section but not later than the March 30 immediately succeeding the hearing with the judgment effective on the March 31 immediately succeeding the hearing for uncontested cases or 10 days after the conclusion of the hearing for contested cases. All redemption rights to the property expire on the March 31 immediately succeeding the entry of a judgment foreclosing the property under this section, or in a contested case 21 days after the entry of a judgment foreclosing the property under this section. The circuit court's judgment must specify all of the following:

not involve a Chapter 7 Trustee who may not be able to file a timely notice as required by the Michigan statute to preserve a Chapter 7 estate interest.

C.      Analysis of Elements of 11 U.S.C. § 547

There are six elements of a preference action and the parties agree that the first four elements exist in this case, so there is no contest that Ms. Reinhardt has met her burden of proof as to those elements. The disagreement is in regard to the last two elements. The Court takes each element separately.

   I.      Whether transfer occurred on or within 90 days of Ms. Reinhardt's bankruptcy petition.

Ms. Reinhardt filed her petition on June 10, 2022. She argues the effective date of the transfer is March 31, 2022; Plaintiff argues the date of the transfer is February 18, 2022, the date the Judgment was signed by the Bay County Circuit Court. The Court finds that the date of transfer is March 31, 2022 for the following reasons:

      A.      Paragraph b of the February 18, 2022 Order states that the fee simple title to the parcel *will vest* absolutely in Petitioner (Defendant in this action) if all forfeited delinquent taxes, interest, penalties and fees against the parcel are not paid to the Defendant on or before March 31, 2022. (emphasis added) To this Court, the use of the word "will" denotes a future event or date. The event is nonpayment and the date is March 31, 2022. If the Judgment read "vests", denoting an active and immediate verb, along with the date of the Judgment, then Defendant's position would be tenable. But the Judgment says neither, so the Court concludes March 31, 2022 is the effective transfer date.

      B.      At oral argument, Defendant's counsel reported to the Court that any taxpayer who contacts Defendant after the date of the Judgment but before March 31, and offers a

viable repayment plan will not have the property sold after March 31. This added practical procedure which keeps people in their homes is understandable and should be encouraged. It also demonstrates that there is still a grace period until March 31.[3]

    C.  The Affidavit of Ms. Collison states that she checks to see if County Treasurer Redemption Certificates or Cancellation of Notice of Judgment of Foreclosure have been filed as part of her review before a title insurance policy can be issued. These documents are only filed after the Judgment, so it reasons that title does not pass until after the deadline for redemption or cancellation. Again, this is a strong practical reason to conclude that March 31, 2022 is the transfer date in this case.

For these reasons, the Court finds that the transfer of Ms. Reinhardt's property occurred on March 31, 2022 and falls within the ninety day preference period of 11 U.S.C. § 547.

II.  Whether the transfer enabled the Treasurer to receive more in a Chapter 7.

Ms. Reinhardt argues the current Michigan tax foreclosure statute allows treasurers to receive more than in a Chapter 7 because the treasurer is allowed to collect interest, costs, a 5% fee, and collection costs. The Defendant disagrees.

At first blush, Ms. Reinhardt has a good argument. The past due taxes on her property may be as high as $11,054, but the Defendant will have title to a house valued at $73,500 to $79,900. There is more to the analysis, however.

---

[3] Defendant's counsel was forthright and candid on this point; the Court appreciates and commends counsel for these statements. It was also apparent by this statement that debtor counsel in a similar situation in the future should consider reaching out between the judgment date and March 31 to try to resolve the nonpayment issue. That said, it is not a given that this tactic will work. In this case, there is no evidence Plaintiff's counsel even had the opportunity to try this approach. Given the excellent representation by Plaintiff's counsel, his representation of Plaintiff is above reproach or criticism.

A. The Defendant must market and sell this house and incur costs to do so, all of which could be avoided if the real estate taxes were paid timely. There is no policy reason to shift all these costs to the Defendant and by extension to all residents of Bay County.

B. The statute sets those costs that can be recovered and those costs appear in line with the usual and necessary costs to foreclose, market, and sell property. The only exception could be the 5% fee, but that amount is less than the standard realtor fees of 6%-7% that this Court sees and approves frequently in real estate transactions.

C. An analogy to the rights of a secured creditor supports Defendant's position. Secured creditors are allowed to collect interest, collection costs, attorney fees, and associated fees because language in signed agreements allow the addition of those amounts to the balances owed to a secured creditor which in turn is recovered and paid to the secured creditor. In those situations, there is no question that the secured creditor is entitled to receive the payment without fear or concern of a successful preference challenge.[4] The same is true here in that the amounts in question are set by statute, are part of the public record as a law of Michigan and are certainly within the purview of the Michigan Legislature.

D. In this case, Defendant will not get the excess funds because Ms. Reinhardt timely filed her notice. Whilst she argues there is no guarantee that the Bay County Circuit Court will award her the excess funds, the record does not support her contention. Instead, as written, Defendant will get no more than entitled, with state court supervision to ensure that result.

The Court concludes and holds that Ms. Reinhardt cannot prove the last element of a Section 547 action.

---

[4] Neither Plaintiff or Defendant presented cases to the Court directly on this point.

D. Possible Limitations of Opinion

The Court during oral arguments in this case posed numerous hypothetical questions to counsel for Plaintiff and Defendant to clarify and explore the arguments and positions of each party. Each counsel responded with thoughtful and candid answers. Some of the Court's questions went beyond the scope of this case such as the impact of the Michigan tax foreclosure procedure where a real property owner did not file a timely notice for excess funds or if the real property owner filed a Chapter 7 proceeding and the impact of that failure on a Chapter 7 bankruptcy estate and Trustee. None of these or other factors are in the instant case. The Court restricts its Opinion to the facts of the instant case and leaves the development of the impact of the recent changes to the Michigan tax foreclosure procedures to future cases when filed.

## Conclusion

Plaintiff, Ms. Reinhardt, has met her burden of proof for most, but not all, of her preference action. The Court denies her Motion for Summary Judgment and grants Defendant's Motion for Summary Judgment.

Defendant's counsel is directed to submit an Order consistent with this Opinion and the rules of this Court.

**Signed on November 17, 2023**



/s/ Daniel S. Opperman

Daniel S. Opperman
United States Bankruptcy Judge